UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

The Hill of Portsmouth
Condominium Association,
     Plaintiff

     v.                           Civil No. 04-cv-403-SM
                                     Opinion No. 2006 DNH 064
Parade Office, LLC,
Parade Hotel, LLC, and
Parade Residential, LLC,
     Defendants

**O R D E R**

The Hill of Portsmouth Condominium Association (the
"Association") brings this action seeking a judicial declaration
that its members hold an enforceable easement for parking and
other purposes on property owned by defendants, Parade Office,
LLC, Parade Hotel, LLC, and Parade Residential, LLC
(collectively, "Parade Office").  Parade Office objects, claiming
the easement was extinguished when the prior owner of the
dominant tenement conveyed that property to the Association's
members, without the benefit of the parking easement.
Alternatively, Parade Office says the very terms of the easement
allow it (the owner of the servient tenement) to use the land
encumbered by the parking easement to the exclusion of the
dominant tenement (i.e., the Association).  The parties have

filed opposing motions for summary judgment, each claiming entitlement to judgment as a matter of law.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Background

The Association and Parade Office own adjacent parcels of land in Portsmouth, New Hampshire. Prior to the events giving rise to this litigation, Barnett Mortgage Trust owned both properties as a single parcel. In 1997, Barnett subdivided the

2

property and submitted what is now the Hill of Portsmouth
Condominium to the provisions of New Hampshire's Condominium Act,
N.H. Rev. Stat. Ann. ("RSA") ch. 356-B, by recording in the
registry of deeds a declaration of condominium.  Subsequently,
Barnett created a parking easement on the adjacent parcel for the
benefit of the condominium property.  The "Declaration of
Easement" recorded in the registry of deeds describes the
condominium property as the dominant tenement (i.e., the property
benefitted by the easement) and the adjacent property as the
servient tenement (i.e., the property burdened by the easement).
Subsequently, Parade Office purchased the servient tenement,
which is now known as the Parade Mall property.  There is no
dispute that Parade Office took title to that parcel of land
subject to the condominium property's parking easement.[1]

    In 2000, Makrie LLC acquired the condominium property by
warranty deed, which specifically identified and included the
parking easement.  The deed to Makrie also provided that the
property was subject to the previously recorded declaration of
condominium (each of Makrie's predecessors in title also took the

---

    [1]    After this litigation was filed, Parade Office conveyed
portions of the Parade Mall property to Parade Hotel and Parade
Residential. Consequently, three entities now own portions of the
Parade Mall property.

property with the benefit of the easement, and subject to the declaration of condominium).

By early 2001, no units had been sold at The Hill of Portsmouth Condominium.  At that time, Makrie, as the sole title holder of the property, amended the condominium declaration by recording a "Restated and Amended Condominium Declaration." Although the metes and bounds description of the property submitted to the amended declaration of condominium is identical to that describing the parcel submitted to the original declaration of condominium, the amended declaration does not make any reference to the parking easement.  Instead, it describes the property as being "a portion" of the property to which Makrie originally took title – presumably, an oblique reference to the missing description of the parking easement.

Makrie also amended the condominium documents to include, as a common expense to be borne by all unit owners, "parking lease payments" – payments to be made by unit owners to Makrie for the privilege of using the parking area covered by the easement. Finally, Makrie recorded a revised site plan which included a revision note that stated: "remove parking easement & note parking encroachment per attorney request."

4

It is apparent that Makrie purposefully omitted any reference to the parking easement from the conveyance of land into the condominium.  Perhaps Makrie thought (erroneously) that by simply amending the declaration of condominium and omitting any references to the easement, it could sever the easement from the dominant estate and retain independent "title" to the easement, despite the fact that it no longer held title to the dominant estate.  And, it appears that, at least for awhile, the Association did not question Makrie's free-standing "ownership" of the easement or its right to charge condominium unit owners a fee for parking on land owned not by Makrie, but by Parade Office.

Eventually, Parade Office filed a petition for declaratory judgment in state court, asserting that the parking easement was extinguished when Makrie purposefully excluded any reference to it from the restated and amended declaration of condominium. Parade Office sought a judicial declaration that Makrie had no legal or equitable interest in Parade's property.  Neither the Association nor any of its members were party to that proceeding.

The state trial court agreed with Parade Office, concluding that:

When [Makrie] resubmitted the property to condominium,
. . . it purposely excluded the parking easement from
the Hill property. . . .  Thus, [Makrie] severed the
easement from the dominant tenement and attempted to
retain the easement for itself.

However, an easement appurtenant cannot exist separate
from the dominant tenement.  [Makrie] no longer owns
the Hill property, having sold all of the condominium
units.  Therefore, <u>the court finds respondent
extinguished the parking easement</u> when it excluded it
from the Amended Condominium Declaration and
subsequently sold all of the condominium units.

<u>Parade Offices, LLC v. Makrie, LLC</u>, 03-E-0449, slip op. at 2-3

(N.H. Super. Ct. Feb. 23, 2004) (emphasis supplied).  Makrie

appealed the Superior Court's decision to the New Hampshire

Supreme Court.


        In connection with that appeal, the Association sought (and

was granted) permission to file an amicus brief.  In its brief,

the Association asserted that it did "not seek a resolution of

its members' claim to the parking easement."  Rather, said the

Association, the purpose of its brief was "to protect against any

such resolution by demonstrating that certain 'extinguishment'

language in the Superior Court's decision was unnecessary dicta

and, further, that the Superior Court could not properly have

resolved the claimed interest of non-parties (the Association's

members)."  In other words, the Association asserted that the

state trial court went too far in concluding that Makrie "extinguished" the parking easement (thereby prejudicing the Association's claim to the benefits of that easement).  Instead, said the Association, the trial court should have limited its ruling with respect to Parade Office, holding only that Makrie had no enforceable interest in that portion of Parade Office's property subject to the parking easement.

The New Hampshire Supreme Court agreed.  In affirming the lower court's decision, the Supreme Court noted that "a dominant tenement's interest in an easement cannot be severed from the land by transferring the land while attempting to retain the easement."  <u>Parade Offices, LLC v. Makrie, LLC</u>, No. 2004-0332 (N.H. Sup. Ct. March 15, 2005).  Importantly, however, the court specifically avoided resolving the issue presented in this case: whether the parking easement was extinguished when Makrie omitted any reference to it from the restated condominium declaration. <u>Id</u>.  ("We need not decide whether the parking easement was extinguished.  Indeed, as noted in its <u>amicus</u> brief, the current unit owners' association, which is not a party to this case, claims an interest in the parking easement.").

As amended, the "Declaration of Easement" at issue in this case actually created two easements – an access easement and a parking easement – each benefitting what is now the Association's property and each burdening what is now Parade Office's property:

> NOW THEREFORE, the said Barnett Mortgage Trust does hereby create a perpetual easement over, upon, and through, said servient tenement for the following uses and purposes:
>
> To provide a means of ingress and egress by foot and vehicle traffic on and over the said servient tenement to and from the dominant tenement in favor of the owners of the dominant tenement, their heirs and assigns forever. . . . . .
>
> FURTHER, the said Barnett Mortgage Trust does hereby create an easement in favor of the owners of the dominant tenement, their heirs and assigns forever, for the purpose of parking in or on an area located in the southeasterly portion of the servient tenement bounded and described as follows . . . .
>
> As consideration for this easement, the owner of the above named dominant tenement does hereby agree for itself, its heirs and assigns forever (during the existence of this easement), to make annual payments to the owner of the servient tenement for its (dominant tenement's) proportionate share of the cost [of maintaining the parking area].  It is further expressly understood that this easement is an easement in common with the owner of the servient tenement, its heirs and assigns forever, and that the owner of the dominant tenement, its heirs and assigns, shall have no right to interfere with the owner of the servient tenement's use of this parking area but shall have the option to terminate this parking easement unilaterally at any time.

Exhibit A–2 to defendant's motion for summary judgment.

8

**Discussion**

When Makrie submitted the Association's property to the restated declaration of condominium, it is clear that:

1.   Makrie intended that the Association's property no longer retain the benefit of the parking easement – that is, Makrie purposefully omitted any reference to the easement when it submitted the property to the restated declaration of condominium in an effort to sever the easement from the dominant estate; and

2.   Makrie did not intend to extinguish the easement; instead, it sought to preserve the existence of the easement and retain independent "title" to it (the latter effort – to retain ownership of the easement – now having been declared unsuccessful by the New Hampshire Supreme Court).

In this case, the parties seize upon those two conflicting intentions/efforts: Parade Office, naturally, focuses on the former and asserts that, consistent with Makrie's efforts, the easement was successfully severed from the dominant estate, did not pass to the Association's members when Makrie recorded the restated condominium declaration without any reference to the easement, and, so, was extinguished.  The Association, on the other hand, focuses on the latter of Makrie's efforts, saying Makrie never intended (nor did it take the necessary and proper steps) to either terminate the easement (under its terms) or

9

extinguish the easement as a matter of law.  And, says the Association, because Makrie plainly could not retain independent "title" to the easement, its efforts to sever the easement from the dominant estate were ineffectual and the easement simply passed along with the dominant estate into the restated condominium.

I.   <u>The Parking Easement was not Extinguished</u>.

The parties to this diversity action agree that New Hampshire's property law governs the resolution of their dispute. The principal legal question presented is this: whether, when a dominant estate (one benefitted by an easement) is conveyed without any reference to that easement, the easement is implicitly extinguished or whether the easement still passes, by operation of law, through the chain of title to the new property owner.

In the related state court proceeding between Makrie and Parade Office, the New Hampshire Supreme Court noted that the parking easement at issue here is an appurtenant easement.[2]  As

---

[2]     For a discussion of the distinction between an "appurtenant easement" and an "easement in gross," <u>see</u> <u>Arcidi v. Town of Rye</u>, 150 N.H. 694, 698 (2004).  For a discussion of the distinction between an "easement" and a "license," <u>see</u> <u>Waterville</u>

such, it is incapable of existence apart from the dominant

estate.  See Arcidi v. Town of Rye, 150 N.H. 694, 699 (2004).  In

other words, the owner of the dominant estate cannot transfer

just the easement to a third party, see Cricklewood on the

Bellamy Condo. Ass'n v. Cricklewood on the Bellamy Trust, 147

N.H. 733, 737 (2002), nor can the owner transfer the dominant

estate itself while trying (as did Makrie) to retain independent

title to or ownership of the easement, see Parade Offices, LLC v.

Makrie, LLC, No. 2004-0332 (N.H. Sup. Ct. March 15, 2005).


It is equally well-settled that when a dominant estate is

conveyed without any reference to the easements benefitting that

estate, those easements are necessarily transferred along with

the dominant estate by operation of law.  New Hampshire statutory

provisions make this clear:

> **Easements, Appurtenances, etc.**  In a conveyance of real
> estate or any interest therein, all rights, easements,
> privileges and appurtenances belonging to the granted
> estate or interest shall be deemed to be included in
> the conveyance, unless the contrary shall be stated in
> the deed, and it shall be unnecessary in order for
> their inclusion to enumerate or mention them either
> generally or specifically.

---

Estates Ass'n v. Town of Campton, 122 N.H. 506, 508-09 (1982).

RSA 477:26 (emphasis suppled).  That statute is entirely
consistent with New Hampshire common law, which has long provided
that "when an easement has become appurtenant to a dominant
estate, a conveyance of that estate carries with it the easement
belonging to it, whether mentioned in the deed or not ."
Spaulding v. Abbot, 55 N.H. 423, 424-25 (1875).  See also Downing
House Realty v. Hampe, 127 N.H. 92, 95 (1985) (noting that the
courts will find that an easement has been abandoned only if the
holder of the easement undertakes "clear, unequivocal and
decisive acts" to evidence that intent).  See generally
Restatement (Third) Property Servitudes (2000) § 5.6 ("[A]n
appurtenant benefit may not be severed and transferred separately
from all or part of the benefited property.  An attempted
severance that is not effective to transfer the benefit does not
extinguish the benefit unless manifestly intended to do so.").

     In other words, New Hampshire's law, like the Restatement,
disfavors the implicit extinguishment or abandonment of easements
and its courts will not infer that an easement has been either
extinguished or abandoned absent express and unmistakable conduct
aimed at achieving that goal.

In this case, when Makrie subjected the dominant estate to
the restated and amended declaration of condominium, none of the
relevant instruments made reference to the parking easement.
Necessarily, then, none of those instruments expressly stated any
intention on the part of Makrie to extinguish the easement.  In
fact, as Parade Office concedes, Makrie specifically intended
that the easement continue.  Consequently, the easement was, as a
matter of law, included in the chain of title when the
Association's property was submitted to the restated declaration
of condominium, notwithstanding Makrie's erroneous belief that it
could retain freestanding "title" to it by not specifically
referring to it in the restated declaration of condominium.  <u>See</u>
RSA 477:26 (requiring the deed to expressly state an intention to
extinguish any appurtenant easements if that is the grantor's
intent).  That is to say, Makrie's ineffective efforts to retain
control over the easement did not serve to extinguish the
easement.  Instead, the easement simply passed (albeit silently
and by operation of law) to the members of the Association, as
owners in common of the dominant estate.

II.  <u>Parade Office's Use of the Servient Estate</u>.

Even if Makrie's efforts to retain the benefit of the
easement for its own uses did not serve to extinguish the

easement, Parade Office says it still retained the authority to
unilaterally extinguish the parking easement by dedicating the
area covered by the easement to a different use:

> The creator of the easement fashioned the dominant
> tenement's parking rights as being subject to the
> servient tenement's "use of the parking area."  Such
> use has in fact occurred with the construction of the
> hotel and condominium on the parking easement area.
> This use was contemplated by the creator of the
> easement.  The language is clear and unambiguous.  "The
> owner of the dominant tenement shall have no right to
> interfere with the owner of the servient tenement's use
> of this parking area."
>
> . . . The drafter clearly intended the dominant
> tenement to have parking in common with the servient
> tenement until such time as the servient tenement had a
> use for the parking area.

Defendant's motion for summary judgment (document no. 22-2) at
18.  Applying that reasoning, Parade Office concludes that:

> The circumstances surrounding the creation of the
> easement lead to the conclusion that the creator of the
> parking easement did not want to limit its later use of
> the easement area to just parking.  The parking
> easement, if not earlier extinguished, was certainly
> lawfully used by the servient tenant to construct a
> hotel and residential condominium.  <u>This ended the
> easement's existence</u>.

<u>Id</u>. at 21 (emphasis supplied).  The court disagrees.

The portion of the easement's description that is central to Parade Office's argument provides:

> It is further expressly understood that this easement
> is an easement in common with the owner of the servient
> tenement, its heirs and assigns forever, and that the
> owner of the dominant tenement, its heirs and assigns,
> shall have <u>no right to interfere with the owner of the
> servient tenements use of the parking area</u> but shall
> have the option to terminate this parking easement
> unilaterally at any time.

Exhibit A-2 to defendant's motion for summary judgment (emphasis supplied).

Construing language employed to establish an easement presents, generally speaking, a question of law for the court to resolve.

> We will apply the general rules of contract
> interpretation to the interpretation of the easement
> agreement.  As a general rule, the proper
> interpretation of a contract is ultimately a question
> of law for this court, and we will determine the
> meaning of the contract based on the meaning that would
> be attached to it by reasonable persons.  When
> interpreting a contract, absent fraud, duress, mutual
> mistake, or ambiguity, the parties' intent will be
> determined from the plain meaning of the language used
> in the contract.

<u>Close v. Fisette</u>, 146 N.H. 480, 484 (2001) (citations and internal punctuation omitted).  <u>See also</u> <u>Lussier v. New England Power Co.</u>, 133 N.H. 753, 756 (1990) ("The beginning and end of

15

our inquiry is found in the words of the easement deeds.  Our
task is to determine the parties' intent in light of the
surrounding circumstances <u>at the time the easements were
granted</u>.") (citation omitted and emphasis supplied).

Here, the language of the parking easement is plainly
inconsistent with Parade Office's view that it could, in essence,
unilaterally terminate the easement by simply putting the
affected parcel to a use inconsistent with parking (by, for
example, erecting a structure there).  First, the power to
unilaterally terminate the easement was granted to the dominant
tenement, not the servient.  The reason for that is clear: as it
was originally drafted, the easement obligated the dominant
tenement to make annual payments to the owner of the servient
tenement for its proportionate share of the costs associated with
maintaining the parking area, but in no event was that amount to
be less than $1,000 each year.  Consequently, if the owner of the
dominant tenement determined that it no longer needed to use the
parking easement, it would, absent the right to terminate the
easement, still be obligated to pay at least $1,000 each year to
the owner of the servient tenement.[3]  Plainly, the drafters of

---

[3]     When the parking easement was amended in 1977, the
reference to the minimum annual payment of $1,000 was removed.

16

the easement anticipated the possibility that the dominant tenement might eventually no longer need (or want to pay for) the benefit of the parking easement and, therefore, crafted a means by which it might terminate the easement and avoid making annual payments for a benefit it no longer needed or enjoyed.

Second, Parade Office reads too much into the language that provides the owner of the dominant tenement "shall have no right to interfere with the owner of the servient tenement's use of this parking area."  By referring to the easement as an "easement in common with the owner of the servient tenement," its drafters contemplated that both the dominant tenement and servient tenement would share rights to use the parking area for parking, with neither unreasonably interfering with the other's enjoyment of it as such – that is, a parking area.  The language does not reasonably lend itself to Parade Office's expansive view that, as holder of the servient estate, it could put the land encumbered by the parking easement to any inconsistent use it pleased and, in so doing, wholly divest the holder of the dominant tenement of the benefit of the easement.  See Waterville Estates, 122 N.H. at 509 ("Although it may be released or abandoned by the owner of

_____

The ability of the dominant estate to unilaterally terminate the easement was, however, retained.

17

the dominant estate, the easement appurtenant is not terminable at the will of the owner of the servient estate.") (citations omitted).

As the owner of the servient estate, Parade Office does not have the right or authority to put the affected property to a use that is inconsistent with the Association's parking rights.  See, e.g., Dumont v. Town of Wolfeboro, 137 N.H. 1, 6 (1993) ("The owner of a servient estate has the privilege to use the land affected by an easement to the extent that his or her use does not impair the dominant tenant's right of way.")  Bean v. Coleman, 44 N.H. 539, 544 (1863) ("[T]here remains with the [servient estate holder] the right of full dominion and use of the land, except so far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted."); Bartlett v. Peaslee, 20 N.H. 547, 549 (1847) ("[T]he grant of a water-course implies a covenant by the grantor not to disturb the grantee in the enjoyment of it.").

Notwithstanding Parade Office's arguments to the contrary, the specific language of the easement does not vest the owner of the servient tenement with any greater rights (or obligations) than those provided by New Hampshire common law.  Had the

18

drafters of the easement intended to vest the owner of the
servient estate with the powers envisioned by Parade Office, they
would have written the easement as something more akin to a
license and given both parties the right to terminate it at will,
rather than granting that authority exclusively to the holder of
the dominant estate.

Accordingly, the court concludes that Parade Office, as
holder of the servient estate, cannot put the encumbered land to
any use that is inconsistent with the Association's parking
rights (absent, of course, the Association's consent).  Instead,
as contemplated by the language of the easement itself, both
Parade Office and the Association have the right to use the
encumbered land as a parking area, with neither unreasonably
interfering with the other's use of that area for parking.  See
generally Sakansky v. Wein, 86 N.H. 337, 339-40 (discussing the
"rule of reason" as applied to easements and noting that the
"rule merely refuses to give unreasonable rights, or to impose
unreasonable burdens, when the parties, either actually or by
legal implication, have spoken generally."); Dumont, 137 N.H. at
7 (observing that "Sakansky concerned a useful easement, whose
use the owners of the servient estate threatened to impair; the

ruling preserved the dominant tenant's right to continue using an
express easement for a reasonable purpose.").

## Conclusion

For the foregoing reasons, the court concludes that the
parking easement at issue in this case was not extinguished by
Makrie's futile effort to sever it from the dominant tenement and
retain independent title to it.  Instead, the rights conferred by
the easement passed by operation of law to the Association's
members, as tenants in common of the dominant tenement.
Moreover, the court rejects Parade Office's contention that it
possesses unilateral authority to terminate the easement by
putting the encumbered land to a use that effectively eliminates
or substantially reduces the benefit of the Association's parking
easement.  The Association, like Parade Office, has the right to
make reasonable use of the encumbered land as a parking area,
with neither party unreasonably interfering with the parking
rights of the other.

Parade Office's motion for summary judgment (document no.
22) is denied, as is its motion to strike (document no. 24).  The
Association's motion for summary judgment (document no. 23) is

granted.   The Clerk of Court shall enter judgment in accordance

with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 12, 2006

cc:  Timothy A. Gudas, Esq.
     Paul McEachern, Esq.

21